23 C.C.P.A.(Patents)

In re KLEINE et al.

Patent Appeal No. 3646.

Court of Customs and Patent Appeals.

June 8, 1936.

Potter, Pierce & Scheffler, of Washington, D. C. (Charles H. Potter and John S. Lachowicz, both of Washington, D. C., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

All the claims of appellants' application for a patent relating to a method of spinning viscose silk were rejected by the Primary Examiner of the United States Patent Office, in view of the prior art, which rejection, upon appeal, was affirmed by the Board of Appeals.

Before the Board, appellants requested a reconsideration of its decision, and, the same being granted, a second decision was by it rendered. For the purposes of appeal, appellants were permitted to make certain changes in their claims, which changes were not regarded as being of sufficient importance to justify the allowance of the claims. The second decision of the Board explains its first decision and takes into consideration the amendments to the claims, as well as the arguments presented in appellants' petition for reconsideration.

There are no drawings submitted with appellants' application, and the nature of the invention may, in a general way, be understood by a consideration of the claims. Claims 3 and 8, as amended, are regarded as illustrative of the eleven rejected claims involved in this appeal. They follow:

"3. Process for manufacturing artificial threads of high tenacity from viscose, which comprises spinning a viscose solution into a precipitating bath containing in addition to 30 to 40 per cent by weight of free sulfuric acid monohydrate at least 20 per cent by weight of an alkali metal bisulfate."

"8. Process for manufacturing artificial threads of high tenacity from viscose, which comprises spinning a viscose solution into a precipitating bath containing in addition to 30 to 40 per cent by weight of free sulfuric acid monohydrate at least 20 per cent by weight of a bisulfate dissolved in the sulfuric acid, the precipitating bath having a temperature of about 30 to 50° C."

The Board describes appellants' alleged invention in the following language: "The disclosure relates to a process for the production of high strength filaments from viscose solutions. The appellants allege

that the novelty in their process resides in carrying out the spinning in a bath containing 30% to 55% by weight of sulfuric acid monohydrate and at least 20% by weight of a bisulfate dissolved in the sulfuric acid. It is appellants' position that by using a lower or medium sulfuric acid content and a relatively high bisulfate content, the spinning of the threads is improved. It is also argued that it is possible to work at more favorable temperatures and that the corrosive action of the bath is diminished and that the degrading action of the bath on the cellulose threads is not as great as it is in baths containing a high concentration of sulfuric acid."

The references relied upon by the Examiner and the Board are: Lilienfeld, 1,-683,199, September 4, 1928; Lilienfeld, 1,-683,200, September 4, 1928; Lilienfeld, 1,-820,811, August 25, 1931.

In discussing the references with relation to the rejected claims, the Board said:

"The Lilienfeld patents, three of which are cited, appear to disclose the use of baths containing free sulfuric acid as low as 45% with a bisulfate component which as calculated by the examiner amounts to over 17%.

"The claims have been rejected as not involving invention in view of the Lilienfeld patents. It is to be noted that applicants' free sulfuric acid content in the bath ranges up to 55% while the disclosure of the art ranges to as low as 45%, establishing an overlapping zone. The minimum bisulfate content of the applicants is 20% or slightly higher than the something over 17% indicated to be the maximum bisulfate content of the art."

The Board then discusses the matter set out in the affidavits submitted by the applicants which contains examples of different quantities of free acid mixed with acid from bisulfate which were employed in bringing about certain results, which results are shown in terms of "total acidity" and "average strength," the latter referring to the strength of the thread resulting from the method. The Board then concluded:

"It appears from Chart I that in the range below a free acid concentration of 50.3% an increase in the bisulfate concentration results in some increase in tensile strength. This increase while slight in the neighborhood of 50.3% free acid concentration becomes more marked with lower acid concentrations. Nevertheless, it appears that any gain in tensile strength resulting from increasing the proportion of bisulfate is more than offset by the re- that the resultant strength of the product is actually decreased by any substitution of bisulfate for the usual free acid conduction in free acid concentration, so centration. In other words, from the standpoint of tensile strength, the bisulfate appears to be an inferior substitute for free acid concentration.

"It may well be, as the applicant contends, that baths with lower free acid concentration are less corrosive and consequently will have a less deleterious effect upon the hands of the workmen or parts of the machine with which the solution may come in contact. We believe that any such advantage would be obvious to one skilled in the art and that to select a bath having less corrosive effect, while at the same time reducing the tensile strength of the product, would not involve invention."

The materials used by appellants were old in the prior art. However, they contend that new and unexpected results flowed from their discovery of the use of sulfuric acid and a bisulfate in the precipitating bath in certain quantities defined in the claims. Appellants in their brief state that it is their practice to spin at between 30° C. and 50° C., while Lilienfeld operated at lower temperatures, 10° C. or less. Claims 8, 10, and 11 of appellants' application call for the operation to be performed at a temperature ranging from 30 to 50° C., and claim 12 calls for a temperature of about 35° C.

The tribunals below concluded that the claims called for nothing new over the prior art except as to a matter of degree. The Board recommended that the proposed amendments to the claims be admitted for the purposes of appeal, and in its second decision said:

"We are still of the view that the advantages over the art claimed by applicants would be obvious and would not amount to patentable improvement."

We agree with the Board of Appeals that the quantities used and temperatures employed in appellants' method, as defined in the claims, were not shown to be critical, and that, even if appellant did obtain new and useful results, it did not require invention to bring about such results.

Appellants in their specification state: "The acid may be raised up to 55 per cent of free monohydrate," which is in the range disclosed by Lilienfeld. Some of appellants'. claims call for a range of such acid between 30 and 40 per cent. Lilienfeld speaks of the degree of concentration of sulfuric acid as between 5 per cent. and 40 per cent., which, according to him, was then known to the prior art. Furthermore, appellants in their application state: "A few simple comparative experiments should be made to determine the best kind of bisulfate or mixture of bisulfates and the most suitable amount to employ with sulfuric acid of particular concentration." Appellants there taught that one desiring to make a proper precipitating bath should experiment in the quantities of certain ingredients to be used. We think that obtaining the desired results from such experimentation was within the scope of one skilled in the art, and that there is nothing shown in appellants' disclosure or claimed in their claims which may be regarded as inventive over the prior art cited.

■ Appellants submitted before the Patent Office tribunals affidavits containing much scientific matter relating to the chemistry involved, as well as numerous arguments in support of their contentions for patentability of their claims, and have here filed an elaborate brief containing extended arguments emphasizing their belief that the Patent Office tribunals erred in holding that their disclosure involved nothing inventive over the prior art cited. We have carefully considered all the affidavits, as well as the arguments in the briefs and record, but we are not convinced that the concurring Patent Office tribunals erred in their rejection of the claims for the reasons which they assigned.

■ Appellants state that "The Dutch Patent Office found allowable the following claim in the Dutch application comparable to the application before this Court," and set out a claim comparable to those at bar. There is nothing in the record to show that the Dutch patent was allowed, and, while appellants' word is not questioned, it is well settled that we may not consider such statements appearing only in the briefs of the parties. In re Spohn, 77 F.(2d) 768, 22 C.C.P.A.(Patents) 1304. Under the circumstances at bar, it is proper to say that, if the alleged fact relating to the Dutch patent were shown in

the record, it would not justify our holding that the Board erred in affirming the Examiner in rejecting the appealed claims. In re Guinot, 76 F.(2d) 134, 22 C.C.P.A. (Patents) 1067.

The decision of the Board of Appeals is affirmed.

Affirmed.