46 CCPA

**Application of August H. HEINRICH.**
**Patent Appeal No. 6449.**

United States Court of Customs
and Patent Appeals.
July 7, 1959.

Bosworth, Sessions, Herrstrom & Knowles, Cleveland, Ohio (Charles E. Herrstrom, Cleveland, Ohio, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (D. Kreider, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and WILLIAM H. KIRKPATRICK, District Judge.[1]

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of Claims 32 to 39, inclusive, of appellant's application for a patent on a sealing system for shafts and the like. Claims 32 and 36, which are representative of the appealed claims, are as follows:

"32. In a sealing system for shafts and the like, a sealing unit comprising a carbon sealing ring having a frusto-conical surface tapering at an angle which, projected against an imaginary reference plane paralleling the central axis of the sealing ring, measures less than 7½°; annular metal mounting means for said sealing ring having a complementary frusto-conical sur-

face tapering at the same angle, the frusto-conical surfaces of said metal mounting means and said carbon sealing ring engaging each other but overlapping at each end in a direction extending generally parallel to the central axis of the sealing ring; and, carrying said mounting means, a metal leaf spring of annular shape having an arcuate portion of short radius of curvature between its inner and outer peripheries."

"36. In a sealing system for a shaft or the like, a sealing unit comprising a yieldable sealing ring having a frusto-conical surface tapering at an angle which, projected against an imaginery reference plane paralleling the central axis of the sealing ring, measures less than 7½°; a non-yieldable mounting ring for said sealing ring having a frusto-conical surface tapering at the same angle, the frusto-conical surfaces of said sealing ring and said mounting ring engaging and overlapping each other in a direction generally paralleling the central axis of the sealing ring; and, carrying said mounting ring, a flexible metal diaphragm of annular shape the general plane of which extends transversely to the central axis of the sealing ring."

The references relied on are:

| | | | |
|---|---|---|---|
| Palmgren | 1,050,385 | January | 14, 1913. |
| Lassen | 1.769,030 | July | 1, 1930. |
| Weis | 1,898,278 | February | 21, 1933. |
| Petrelli | 2,089,570 | August | 10, 1937. |
| Murphy | 2,251,020 | July | 29, 1941. |
| Vedovell | 2,395,359 | February | 19, 1946. |

———◆———

Appellant's alleged invention relates to a means for sealing a rotary shaft. In a preferred embodiment illustrated the shaft projects through a bushing and is provided at its end with a collet ring, the ring and bushing having smoothly fin-

ished annular surfaces which extend radially outward at right angles to the shaft and face each other across the space in which the sealing means is located. The sealing means comprises two identical units, each consisting of a metal

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of*

*Judge O'CONNELL*, pursuant to the provisions of Title 28 United States Code, Section 294(d).

mounting ring mounted on the shaft, and a sealing ring of carbon or other non-metallic material which is frangible or yieldable surrounding and supported on the mounting ring. The outer surfaces of the mounting rings are frusto-conical and extend at an angle of $7\frac{1}{2}$ degrees or less with respect to the axis of the shaft. The inner surfaces of the sealing rings have a corresponding frusto-conical shape so that they fit closely and over-lappingly over the mounting rings and, when the sealing and mounting rings are pressed together in an axial direction, they engage with such a tight fit that the sealing rings must be broken or distorted in order to remove them. The sealing rings have smoothly finished radially extending faces which engage the correspondingly finished surfaces of the bushing and collet ring, respectively, to form seals.

The frusto-conical surfaces of the mounting rings are smaller at their outer ends, i. e., the ends adjacent the seals, so that the larger ends of the surfaces lie adjacent each other near the middle of the space between the bushing and the collet ring. Between the larger ends of the mounting rings there is located a spring device comprising a ring which surrounds and is spaced from the shaft, and a pair of outwardly facing annular leaf springs which extend axially inwardly from the ring and respectively engage the mounting rings so that those rings are urged outwardly along the shaft to force the sealing rings into engagement with the bushing and collet ring respectively. Each leaf spring comprises a generally flat inner portion joined to the outer ring by a portion of short radius of curvature.

The Weis patent discloses a sealing means for a pump shaft comprising a fixed sleeve which surrounds the shaft and is formed integrally at one end with a radially extending plate. Surrounding the opposite end of the sleeve is an annular retaining member provided at the end which faces away from the plate with a cavity having a frusto-conical wall. Received in the cavity is a split

ring having a similar frusto-conical surface engaged with the cavity wall. The outer end of the ring is provided with a radially extending surface which sealingly engages a similar surface on a collar which rotates with the shaft. The retaining member is urged axially by a coil spring surrounding the shaft so that it tightly engages the split ring and forces the sealing surface of the latter into engagement with the collar. In his preferred form Weis provides a pin engaging the retaining member and the ring to prevent rotation of the latter, but he states that the clamping action between the parts may be relied on for that purpose.

The patents to Lassen, Petrelli, and Murphy all show flexible diaphragms, generally corresponding to appellant's leaf springs, which urge packing members into sealing position.

The Vedovell patent shows an annular shaft sealing member, which may be of carbon, and which is urged radially into sealing engagement by means of a spring. The sealing ring is cylindrical and is press-fitted into a correspondingly shaped metal tube.

The Palmgren patent was not relied on by the board and is not as pertinent as the reference above discussed. Accordingly, it will not be considered in detail here.

In the decision of the Board of Appeals the Weis patent is relied on as the principal reference. As explained above, that patent discloses appellant's claimed combination of a sealing ring and a mounting ring having engaging tapered surfaces, and a spring for urging the ring assembly into sealing position. Each of the appealed claims calls for a taper of less than $7\frac{1}{2}°$ as projected against a plane parallel to the axis of the sealing ring. Weis does not specify the angle of taper but the board stated that the taper shown in his drawing is less than $7\frac{1}{2}°$ and that statement is not questioned here by appellant. While it is true that patent drawings are not ordinarily considered to be working drawings drawn to scale, the only reasonable in-

terpretation of the Weis disclosure is that a very small angle of taper is to be used and we are of the opinion that one skilled in the art would normally use a taper of less than 7½° in carrying out the teachings of the Weis patent, and that such an angle is, therefore, fairly disclosed by the patent.

The appealed claims distinguish over the Weis patent either in the material of which the sealing ring is made, the specific spring structure by which it is urged into sealing position, or both. The material is variously specified in different claims as being yieldable, frangible, or resilient, or, specifically, as being carbon. Appellant does not contend that sealing materials of the kinds claimed are new *per se* and, as above noted, the Vedovell patent shows a carbon sealing ring. It is appellant's position, however, that such materials, when associated with a metal mounting ring of the type claimed produce an unexpectedly improved device, in that a bond is produced which is so strong that it can be loosened only by breaking or deforming the sealing ring.

Weis does not specify the material of which his sealing ring is made, but it is evidently of such a nature as to form a firm bond with the mounting ring under working conditions since he states that the clamping action between the two may be relied on to prevent relative rotation. It would appear that the Weis disclosure contemplates the use of any known sealing material for the sealing ring and that it would be obvious that carbon or a resilient or yieldable material could be used for that purpose. Accordingly, even if it be assumed that such a material gave improved results, its use would not be patentable since a patent may not properly be granted on the basis of a result which would flow naturally from the teaching of the prior art. In re Kepler, 132 F.2d 130, 30 CCPA 726; In re Busch, 251 F.2d 617, 45 CCPA 766.

Moreover, in our opinion, it has not been shown that any new or unexpected result would be produced by making the sealing member of Weis of carbon or of a yielding or resilient material. The properties of such sealing materials are well known and it would be apparent that a tight joint might be obtained by pressing them against an appropriately shaped metal member. Vedovell shows a cylindrical carbon sealing member press-fitted into a similarly shaped metal member to form a tight joint and, in view of that showing, it would not be surprising to find that a similar joint would result if tapered members were used.

Appellant emphasizes the fact that the sealing ring of Weis is made in two parts, and alleges that such an arrangement would result in leakage. However, if it were found that such leakage took place it would be obvious that it could be avoided by forming the sealing member in one piece. It is to be noted, moreover, that the appealed claims are not limited to the use of a one-piece sealing member. Under such circumstances the fact that the sealing ring of the Weis patent is made in two parts does not materially lessen the pertinence of the patent as a reference.

We agree with the board that the substitution of a leaf spring or diaphragm such as is shown in the Lassen, Petrelli, or Murphy patent for the coil spring of Weis would be an obvious expedient. Both types of spring are well known and the advantages and disadvantages of each are apparent. Accordingly, the selection of one or the other for any particular installation is merely a matter of choice or engineering design.

There are of record several affidavits setting forth the advantages of appellant's sealing means and stating that, despite the familiarity of the affiants with the art, the idea of constructing a seal in that manner did not occur to them. As above noted, we are of the opinion that the stated advantages are merely *those which would logically result from* following the teachings of the prior art. The fact that the affiants did not happen to think of the particular structure claimed here does not afford convincing evidence that it was not obvious, particularly since it is not stated that affiants

757

were familiar with the Weis patent which forms the principal basis of the rejection.

We have carefully considered all the arguments advanced by counsel for appellant in oral argument and in their extensive and carefully prepared brief, but we find no reversible error in the holding of the board that the appealed claims define nothing more than modifications of the Weis device which would be obvious to a skilled worker in the art.

The decision of the Board of Appeals is affirmed.

Affirmed.