THABET MANUFACTURING COMPANY, d.b.a. American Beauty Ventilated Aluminum Awning Company, Appellant,

v.

KOOL VENT METAL AWNING CORPORATION OF AMERICA, Appellee.

No. 12251.

United States Court of Appeals Sixth Circuit.

Oct. 7, 1955.

Lawrence H. Cohn, St. Louis, Mo. (Ira R. Cole, Toledo, Ohio, Terry & Cohn, St. Louis, Mo., of counsel), for appellant.

William H. Parmelee, Pittsburgh, Pa. (Harry O. Ernsberger, Toledo, Ohio, Francis W. McCauley, Detroit, Mich., of counsel), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellee, Kool Vent Metal Awning Corporation of America, filed this action in the District Court seeking an injunction against the appellant and an accounting for alleged infringement of two patents relating to metal awnings. The appellant pleaded invalidity of the patents and non-infringement. Other defenses were raised in the District Court but are not involved in this appeal. The District Judge found the patents valid and infringed, and this appeal followed.

One of the patents involved is Houseman, Reissue No. 20,975, January 10, 1939, with the following Patent Office history: In 1935, George A. Houseman filed application for Letters Patent covering a metal awning, and on November 9, 1937, original Letters Patent No. 2,-098,705 was granted. After issuance of the patent, Houseman made application for re-issue which would allow certain additional claims relating to side curtains. On January 10, 1939, Letters Patent Re-issue No. 20,975 was granted. In 1944, Meyer Harrison and Samuel Korman acquired from Houseman a grant of the entire right, title and interest of the patent for 38 States of the United States and its territories. On or about January 1, 1945, the appellee corporation was chartered in Pennsylvania and Harrison and Korman assigned to it the rights which they acquired from Houseman.

The other patent involved is Design Patent No. 154,550 issued on July 19, 1949 to the appellee as the assignee of Harrison and Korman.

The appellant formerly operated under the name of Thabet Manufacturing Company but has been doing business as the American Beauty Ventilated Aluminum Awning Company, incorporated under the laws of Ohio, with a regular and established place of business in Toledo, Ohio, where the acts of infringement complained of occurred.

The Houseman patent discloses a metal awning having a sloping roof formed of a series of spaced lower channels with upturned flanges with a series of upper channels having downturned flanges, the upper ones spanning and covering the space between the lower ones. The respective channels are spaced so that air may escape between the channel elements. In addition the patent discloses triangular end curtains at each end of the awning. These end curtains are comprised of parallel vertical plates or panels that are attached to the roof and end frame at each end of the awning. They are angled outwardly toward the building to which the awning is attached at an angle of less than 90°—as shown in the patent this angle may be estimated at around 30°. The parallel plates or

panels overlap one another to the extent that direct rays of sun or wind-driven rain cannot pass through between them to enter the window or doorway over which the awning is placed. The end plates or panels of the patent are also provided with flanges along their vertical edges designed to prevent the flow of water from wind-driven rain inwardly through the awning, and they are provided with portions referred to as roof extensions

Only Claims 16, 17 and 18 of the Houseman re-issue patent, which deal with the end curtain construction of the awning, are involved in this litigation. These claims read as follows:

"16. An awning adapted to be fastened to a wall or the like support, including a curtain comprising a series of spaced overlapping parallel vertical depending plates, angling outwardly from the awning toward the wall at not more than ninety degrees.

"17. The device as claimed in claim 16 wherein the said vertical plates are provided with flanges on the vertical edges to obstruct the flow of water in a parallel direction.

"18. The device as claimed in claim 16, wherein the said vertical plates are provided with roof extensions adapted to join to the main roof of the awning."

Appellant concedes that if claim 16 is valid and infringed claims 17 and 18 are also valid and infringed.

Appellant's awning which appellee claims infringes the re-issue patent also has a metal roof made of a lower series of channels and an upper series of channels. These plates or channels are joined tightly together so that there is no ventilation through the roof structure as there is in the Houseman awning. The end curtains, which are here involved, are formed of parallel vertical panels or plates angled outwardly from the awning toward the wall. However, they are latterly spaced apart so that the rays of the sun coming in a direction perpendicular to the side curtains will pass through the separations and into the space below the awning. The spaces between the plates are approximately one inch wide, varying from about 1 inch to 1⅛ inches.

With respect to infringement, appellant contends that while it has the same series of plates in the end curtain that Houseman has it has separated these plates so that if one stands directly in front of a side curtain, but not in front of the awning, he can look directly between the plates. Accordingly, the plates are not overlapping. Since claim 16 of the Houseman re-issue patent recites "Overlapping, parallel, vertical, depending plates" there is no infringement. Appellee contends that the term "overlapping" is to be construed with reference to the function of the plates, and that if the plates overlapped in a direction to prevent direct sunlight from entering the window the invention is present and the terms of the claim are satisfied.

The District Judge found that the function of the end curtain was to admit diffused light and air while preventing direct rays of sun or wind-driven rain from passing through the parallel plates to enter the window or doorway over which the awning was placed, and that the term "overlapping" as used in claim 16 meant overlapping in that sense. With respect to the parallel, vertical panels or plates in the appellant's awning, he made the following finding of fact: "They are so spaced that for the purpose of protecting the window or door opening they fully serve the same function and purpose as the corresponding panels or plates of the patent in suit. They are the full counterpart and equivalent of the patented end curtain for all useful purposes. They overlap in the functional sense and in an actual sense from the standpoint of protecting the window or opening in front of which the awning is placed. These plates or panels have edge flanges and roof extensions corresponding in purpose and effect to

the flanges and roof extensions of the Houseman panels." Such a finding supported his ruling of infringement, under the well settled rule that "one thing is substantially the same as another if it performs substantially the same function in substantially the same way to obtain the same result," and that such a situation, although involving some change in form and position, constitutes an infringement. Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; E. H. Bardes Range & Foundry Co. v. American Engineering Co., 6 Cir., 109 F.2d 696, 698.

■ Appellant contends that the construction given to the patent by the District Judge is not the correct one, and is not authorized by its file-wrapper history. It relies upon the rule of patent construction that a claim in a patent as allowed must be read and interpreted not only in the light of the specification, but also with reference to its file-wrapper history. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 217–218, 61 S.Ct. 235, 85 L.Ed. 132; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541, 545, Whitman v. Andrus, 6 Cir., 194 F.2d 270, 275.

In the Oath accompanying the Petition for Reissue and setting forth the reasons why he deemed his original patent inadequate, Houseman stated: "1. The omission from the specification and description to bring out the fact that applicant's awning shuts out all direct rays of light." He also referred to the fact that the essential feature in ventilated awning structure is means to permit the escape of hot air "while not permitting any of the *direct rays* of light to penetrate through." (Emphasis added.)

The Patent Examiner said: "Claims 16–19 directed to the curtain are rejected as contrary to applicant's oath, page 2, lines 2 and 7 thereof, relating to direct rays of light. It is evident that awning according to the oath is to shut off direct rays from the sun while the curtain being a part of the awning, admits such direct rays."

Houseman answered this contention with the following statement: "Applicant's oath, page 2, lines 2 to 7, goes into detail somewhat in speaking about cutting out the direct rays of light 'through the roof of an awning.' Applicant also wants to call the Examiner's attention to that where the plates of the curtain angle outwardly toward a wall or the like, *no direct rays of light could come through the side curtains at all* as the direct rays of light would be coming from a direction opposite the wall or *perpendicular to the side of the awning. In both of which cases the direct rays of light would be entirely stopped by the plates 11."* (Emphasis added.)

■ It appears to us from the foregoing exchange of views that Houseman's own interpretation of "overlapping" parallel vertical depending plates was such an overlapping as would stop direct rays of light coming perpendicular to the side of the awning, and that such an interpretation was accepted by the Patent Office. It should be given the same interpretation here. Whitman v. Andrus, supra, 6 Cir., 194 F.2d 270, 274–275, certiorari denied 344 U.S. 817, 73 S.Ct. 12, 97 L.Ed. 636; Wiegand v. W. Bingham Co., 6 Cir., 106 F.2d 546, 548, certiorari denied 308 U.S. 627, 60 S.Ct. 386, 84 L.Ed. 523; Sager v. Glove Corporation, 7 Cir., 118 F.2d 873, 874; Cutter Laboratories v. Lyophile-Cryochem Corp., 9 Cir., 179 F.2d 80, 87. An awning is not a difficult structure for a layman to understand. Claim 16 is written in ordinary, nontechnical language. The word "overlapping" has a common well understood meaning. Extrinsic evidence from an expert witness for the appellee giving a different meaning to the word is, of course, not binding on the Court, and can be disregarded. General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 914–915; American Stove Co. v. Cleveland Foundry Co., 6 Cir., 158 F. 978, 984–985; Singer Mfg. Co. v. Cramer, 192 U.S. 265, 275, 24 S.Ct. 291, 48 L.Ed. 437. Appellant's plates do not actually overlap, do not stop the direct rays

of light coming perpendicular to the side of the awning, and, in our opinion, do not infringe. The same conclusion was recently reached by the U. S. District Court for the Eastern District of Missouri, Eastern Division, in Koolvent Metal Awning Corp. of America v. Kool-Vent Metal Awning Corp. of Missouri, —— F. Supp. ——.

Appellee contends that the rule applied in Schriber-Schroth Co. v. Cleveland Trust Co., supra, and Midland Steel Products Co. v. Clark Equipment Co., supra, namely that a patentee may not, by resort to the doctrine of equivalents, give to an allowed claim a scope which it might have had without the amendment, is not applicable, because the amendments made by Houseman to claim 16 in response to the rejection by the Patent Office did not involve the word "overlapping." Our ruling is not based on the effect of the amendment, but on the proper interpretation which we think should be given to the word "overlapping," supported by the file-wrapper history.

The Houseman Patent expired November 9, 1954. In view of that fact and our ruling against infringement, we find it unnecessary to rule on the question of the validity of the patent in issue. Dow Chemical Co. v. Skinner, 6 Cir., 197 F.2d 807, 811–812, certiorari denied 344 U.S. 856, 73 S.Ct. 94, 97 L.Ed. 664; Landis Machinery Co. v. Chaso Tool Co., 6 Cir., 141 F.2d 800, 805; Kemart Corp. v. Printing Arts Research Laboratories, 9 Cir., 201 F.2d 624, 634.

The design patent S. B. Korman et al. Des. No. 154,550, application for which was filed on September 5, 1947, is for a semi-circular metal canopy for a doorway. It calls for a steep pitch with a valance which is joined to the steep roof by a sharp bend which presents a sharp, severe line or edge. Appellant's alleged infringing design appears to be a copy, and its defense is directed to the invalidity of the Korman patent.

Prior art patents to Morris No. 739,694, Houseman No. 2,098,705, Hoek No. 244,058, Averill No. 369,493, Houser No. 1,460,098, and Eschrich No. 2,577,317 were cited to the District Judge. He considered all of them, with the exception of the Eschrich patent, as so remote as to preclude any thought that they resemble the novel design claimed in the design patent in suit. On this appeal appellant's chief reliance is upon the Eschrich patent, application for which was filed on July 31, 1946, which the District Judge held failed to disclose the contour or appearance of the design patent in suit.

Eschrich relates to awning umbrellas made of metal with louvers of substantially dovetail construction so as to provide for the circulation of air underneath the roof of the umbrella and to prevent the ingress of rain. It is entirely a functional patent. No claim was made to any element of design which was embodied in the structure. Although the Eschrich patent primarily relates to an umbrella, figure 24 therein is described as showing a top plan view of a half of a lawn umbrella for mounting on a wall as a shade or for use as an awning over a window.

The District Judge stated in his opinion that the Eschrich patent pointed to a type of construction and had no regard for appearance, that the design patent in suit was for a design of a canopy for a doorway only with no functional intendment, that it contemplated a novel and attractive structure, and that the contours and the eye appeal of the two differed. He made findings that the Eschrich umbrella used as a canopy did not produce the same aesthetic effect upon the eye of an ordinary observer as the patented design and that the contour or appearance of the design patent in suit was not disclosed or illustrated by Eschrich. Appellant contends that such conclusions are not justified when measured against well settled principles controlling the issuance of design patents.

Sec. 171, Title 35, U.S.Code provides: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." The statute con-

templates appearance rather than utility. The thing invented for which a design patent is given is that which gives a distinctive appearance to the article to which it may be applied. Gorham Co. v. White, 14 Wall. 511, 81 U.S. 511, 524–525, 20 L.Ed. 731; Cavu Clothes v. Squires, Inc., 6 Cir., 184 F.2d 30, 32–33.

A design patent must disclose inventive originality in design and ornamentation; mere mechanical skill is no more sufficient to constitute inventive art in the case of the design artist than in the case of the engineer. Capex Co. v. Swartz, 7 Cir., 166 F.2d 5, 6; Western Auto Supply Co. v. American-National Co., 6 Cir., 114 F.2d 711; Cavu Clothes v. Squires, Inc., supra.

A design patent must be possessed of novelty; the adaptation of old devices to new purposes, however convenient or useful they may be in their new role, is not invention. Western Auto Supply Co. v. American-National Co., supra; Imperial Glass Co. v. A. H. Heisey & Co., 6 Cir., 294 F. 267. The degree of difference required to establish novelty occurs when the average observer takes the new design for a different, and not a modified already existing design. Application of Johnson, 175 F.2d 791, 792, 36 C.C.P.A., Patents, 1175; Application of Abrams, 205 F.2d 202, 203, 40 C.C.P.A., Patents, 1045. The fact that a design may be distinguished from those found in the prior art does not import the required novelty and ornamentation; its overall aesthetic effect must represent a step which has required inventive genius beyond the prior art. Burgess Vibro-crafters, Inc., v. Atkins Industries, 7 Cir., 204 F.2d 311, 314.

The appearance of a utilitarian or mechanical device properly may be cited as a reference in considering an application for a design. Application of Jennings, 182 F.2d 207, 208, 37 C.C.P.A., Patents, 1023; Application of Weil, 201 F.2d 946, 40 C.C.P.A., Patents, 788; Application of Lurelle Guild, 204 F.2d 700, 702, 40 C.C.P.A., Patents, 996; See In re Hargraves, 53 F.2d 900, 901, 19 C.C.P.A., Patents, 784.

We are of the opinion that when the design patent in suit is tested by the foregoing principles it does not constitute invention. Two distinguishing features relied upon by appellee are the steep pitch of the roof of the canopy and the fact that the valance is joined to the roof in such a way as to present a sharp horizontal line or edge instead of the rounded contour shown by the turned-down ends of the panels in the Eschrich patent. Although a casual observation of the different canopies discloses a somewhat different general appearance, we do not regard the difference as substantial enough to have required the exercise of the inventive faculty. Application of Weil, supra, 201 F.2d 946, 947, 40 C.C.P.A., Patents, 788; Application of Zemon, 205 F.2d 317, 319–320, 40 C.C.P.A., Patents, 1051; Application of Lurelle Guild, supra, 204 F.2d 700, 703–704, 40 C.C.P.A., Patents, 996; Imperial Glass Co. v. A. H. Heisey and Co., supra.

The judgment of the District Court is reversed and the case is remanded with directions to enter judgment for the appellant.